UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| THY MA STIMAC, individually and on behalf of a class of similarly situated individuals,<br><br>38 Winslow Park Dr.<br>Catonsville, Maryland 21228<br><br>Plaintiff,<br><br>v.<br><br>MEDSTAR HEALTH INC.,<br><br>10980 Grantchester Way<br>Columbia, Maryland 21044<br><br>Defendants. | CLASS ACTION |

**COMPLAINT**

**INTRODUCTION**

1. Defendant MedStar Health Inc. ("MedStar") is one of the largest employers in the region and a multi-billion-dollar non-profit health system that generates hundreds of millions of dollars each year in revenue.

2. But even with its considerable revenue, MedStar cheats its 33,000 workers in a small but substantial way: by denying annual raises to employees who happen to be out on maternity leave, disability leave, and other medical leave, even though the employees would otherwise be entitled to those raises if they were not out on leave. Over time, this company-wide policy has added up to what appears to be millions of dollars for MedStar at the expense of its tens of thousands of workers.

3. MedStar's policy violates the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* The FMLA requires that covered employers provide an eligible employee with "a total of 12 workweeks of leave during any 12-month period for" certain qualifying reasons, including "the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). It is unlawful for any employer to interfere with any employee's exercise of any right under the FMLA. *See id.* § 2615(a).

4. By withholding raises from employees who are out on FMLA leave solely because they are out on FMLA leave, MedStar interferes with the exercise of its employees' rights under the FMLA. MedStar is thus liable for unpaid wages, interest on those wages, and an additional amount as liquidated damages. *See id.* § 2617(a)(1)(A).

5. Plaintiff Thy Ma Stimac has been a successful occupational therapist at MedStar since 2017. When Stimac had a child, she took maternity leave beginning in October 2024.

6. MedStar applies annual raises in November. When November came and went, Stimac observed that her annual raise was not applied to her paycheck, even though MedStar told her that she had already qualified for it.

7. When Stimac inquired with MedStar, multiple MedStar representatives advised her of what they called "our standard policy and approach for associates on a leave of absence," which is to deny any annual raise to those employees until they return from leave. Stimac returned from leave in January 2025, at which point MedStar applied the raise to her paycheck.

8. When Stimac advised that the policy "seems to discriminate against employees who have exercised their right to take FMLA leave," the MedStar representatives wished her a happy new year. When Stimac requested the documentation explaining the rationale for the policy, the MedStar representatives told her there was no written policy that they could share with Stimac, but they assured her that this was "our standard policy and approach" "across MedStar."

9. This standard policy is illegal. Stimac brings this suit as a class action to enjoin enforcement of MedStar's policy, recover the amounts owed to Stimac's similarly situated current and former MedStar employees, and hold MedStar accountable for its continued and willful violation of the FMLA.

**JURISDICTION AND VENUE**

10. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because it arises under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

11. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

12. The Court has personal jurisdiction over MedStar because MedStar has its principal place of business in Maryland.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(a) and (b) because MedStar is a resident of Maryland and because Maryland is where a substantial part of the events giving rise to the claim occurred.

## THE PARTIES

14. Plaintiff **Thy Ma Stimac** is a resident of Maryland. Since 2017, she has been employed at MedStar Health as an occupational therapist.

15. Defendant **MedStar Health Inc.** ("MedStar") is the parent and controlling entity for a $7.7 billion not-for-profit health system that provides services to patients in Maryland and Washington, D.C. MedStar has more than 34,000 associates and 4,000 affiliated physicians. In fiscal year 2023, MedStar generated $366.6 million in revenue.

## FACTUAL ALLEGATIONS

16. Stimac has been an occupational therapist for MedStar since 2017. She currently works at MedStar Union Memorial Hospital.

17. Since joining MedStar, Stimac has always received strong reviews from her superiors. Stimac has never been disciplined or reprimanded by her superiors at MedStar.

18. MedStar's fiscal year runs from July 1 to June 30.

19. MedStar pays employees biweekly.

20. MedStar provides annual raises to its employees each year in November.

21. The amount of the annual raise is based on quality of performance. MedStar has three tiers of performance: "Exceptional," "Strong" (also called "Standard"), and "Needs Improvement."

22. The tiers of performance are not tied to any quantitative metrics like the number of hours worked or the number of patients served. They are tied to qualitative factors such as

producing "incomparable (and unexpected) work products that deliver business and/or patient outcomes far beyond expectations" or "[d]emonstrat[ing] strong leadership."

23. On or around June 30, employees receive their annual performance reviews. This is when MedStar categorizes its employees into one of the three tiers of performance, "Exceptional," "Strong," or "Needs Improvement."

24. In or around September, MedStar then advises employees of the raise percentages that correspond to the three tiers of performance and when those raises will begin to be reflected in the respective employees' pay for the following fiscal year.

25. The raise percentages are always between 2.0% and 4.5%, functioning more like a cost-of-living adjustment rather than a merit-based raise. The percentages are not individualized. Rather, employees who received an "Exceptional" categorization receive one percentage and employees who received a "Strong" categorization receive a slightly lower percentage. Employees who received a "Needs Improvement" categorization do not receive a raise.

26. For example, MedStar advised in September 2024 that employees with the "Exceptional" rating would receive a 4.5% increase in pay and those with the "Strong" rating would receive a 3.5% increase. It also advised that the increases would appear in the November 22 paycheck.

27. Since 2017, Stimac has always received the "Strong" rating and a corresponding raise of between 2.0% and 4.0%.

28. The same was true in 2024: MedStar advised Stimac in September 2024 that she received the "Strong" rating and that she would receive a 3.5% increase.

29. When Stimac had a child in October 2024, she went out on maternity leave, beginning on October 14, 2024. This leave was approved by MedStar as FMLA leave.

30.     When November 22, 2024 came and went, Stimac noticed that MedStar withheld the annual raise they had already told her she would receive. This happened again for her paychecks in December 2024.

31.     MedStar has a centralized human resources department. The department sets, coordinates, and enforces policy and practices for all of MedStar's employees.

32.     Stimac inquired about why she was denied her raise in November and December 2024 with MedStar's HR department. Between January 6 and January 21, 2025, multiple representatives of that department told Stimac the same thing: that MedStar's "standard policy and approach for associates on a leave of absence" is to deny the annual raise while the employee is out on leave, and to apply it when the employee returns from leave. This policy applied "across MedStar, not just" the MedStar facility where Stimac worked. This policy had nothing to do with Stimac specifically, the quality of her work, her performance categorization, or anything specific to her employment at MedStar.

33.     Stimac advised the HR department representatives the practice was "concerning to me as it seems to discriminate against employees who have exercised their right to take FMLA leave."

34.     The HR representatives ignored Stimac's comment about the potential violation of the FMLA. But they wished her a happy new year.

35.     When Stimac returned from leave in January 2025, her paycheck for January 6, 2025 reflected the 3.5% increase, incorporating the raise that should have been applied beginning in November 2024 had she not taken legally protected leave.

36.     MedStar did not, however, provide backpay for the pay she was denied while she was out on leave.

37. MedStar's policy categorically denies employees on FMLA leave the raise they would otherwise be entitled to if they were not on FMLA leave.

38. MedStar is a sophisticated company with hundreds of millions of dollars in revenue and access to legal counsel who can advise MedStar on its FMLA compliance obligations.

39. MedStar intentionally, systematically, and as part of a standard policy and practice denies employees on FMLA leave the raise they would be entitled to if they were not on FMLA leave. MedStar saves thousands of dollars in payroll each year across its tens of thousands of employees by not providing those employees their earned raises while they are out on FMLA leave.

40. MedStar's actions in violation of the FMLA are made willfully in an effort to avoid paying employees their raises.

41. MedStar knew, or absent its own recklessness should have known, that their employees were entitled to receive their annual raises while on FLMA leave.

42. MedStar has not made good faith efforts to comply with the FMLA.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 2617(a)(2)(B), which provides that an action for damages or equitable relief brought under the FMLA may be brought by the employee "and other employees similarly situated."

44. Plaintiff asserts her claim on behalf of the following class:

> All current and former employees of MedStar, its subsidiaries, and its affiliates who were eligible for annual raises but did not timely receive them because they were on Family and Medical Leave Act-approved leave.

45. <u>Numerosity.</u> The class is so numerous that joinder of all class members is impracticable. MedStar reports that it has tens of thousands of employees.

6

46. <u>Commonality.</u> Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members, including but not limited to:

- Whether MedStar's policy violates 29 U.S.C. § 2615(a);
- Whether MedStar's conduct is willful, *see* 29 U.S.C. § 2617 (c)(2);
- The proper measure of damages; and
- The proper preliminary and permanent injunctive relief against MedStar.

47. <u>Typicality.</u> Plaintiff's claims are typical of the members of the class. Plaintiff was employed by MedStar and subject to common policies, procedures, and practices.

48. <u>Adequacy.</u> Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to the prosecution of this action and has retained counsel experienced in class action litigation to be appointed as class counsel. There are no conflicts between Plaintiff and the class she seeks to represent.

49. Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The core policy governing Plaintiff's compensation during FMLA leave is uniform across the class. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning MedStar's practices. Moreover, management of this action as a class action will likely not present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

50. Plaintiff intends to send notice to all members of the class to the extent required by Rule 23(c)(2) of the Federal Rules of Civil Procedure. The names and addresses of the class members are available from MedStar's records and other available sources.

## COUNT 1

### Violation of the Family and Medical Leave Act
### 29 U.S.C. § 2617(a)(2)

51. Plaintiff incorporates by reference all prior paragraphs.

52. The FMLA requires that covered employers provide an eligible employee with "a total of 12 workweeks of leave during any 12-month period for" certain qualifying reasons, including "the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A).

53. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise[] any right" under the FMLA and further makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA. *See* 29 U.S.C. § 2615(a).

54. In denying the annual raise to Stimac and putative class members because those employees were exercising their FMLA rights, MedStar interfered with, restrained, and denied the exercise of that right.

55. MedStar is thus liable to Stimac and the other absent class members for the amount of (1) "any wages, salary, employment benefits, or other compensation denied or lose to such employee[s] by reason of" MedStar's violation of the FMLA, (2) the interest on that amount, and (3) an additional amount as liquidated damages equal to the sum of (1) and (2). *See* 29 U.S.C. § 2617(a)(1)(A).

56. MedStar is further liable for relevant equitable relief, *i.e.*, elimination of the relevant policy and restitution to those employees who have been denied their raises because they took FMLA leave.

57. MedStar is also liable to Stimac for "a reasonable attorneys' fee, reasonable expert witness fees, and other costs" of this action. *See* 29 U.S.C. § 2617(a)(3).

## COUNT 2

### Unjust Enrichment

58. Plaintiff incorporates by reference all prior paragraphs.

59. Stimac may recover from MedStar for unjust enrichment.

60. MedStar agreed that Stimac was owed a raise.

61. But MedStar withheld the raise while Stimac was out on FMLA leave.

62. MedStar knowingly retained both the benefit of Stimac's continued employment with MedStar and the benefit of her raise, under circumstances that make it inequitable for MedStar to retain those benefits without the payment of their value. Those circumstances were that MedStar unilaterally decided that it would not pay Stimac her raise solely because Stimac was out on FMLA (maternity) leave.

63. MedStar is thus liable to Stimac for the value of the benefits it retained.

64. The same analysis applies to the putative class members.

65. MedStar is thus liable to Stimac and the putative class members for the gains it obtained.

### PRAYER FOR RELIEF

66. Stimac requests that the Court:

    a. Enter judgment against MedStar;

    b. Enjoin MedStar from its violation of the FMLA;

    c. Certify this action as a class action, designating Stimac as representative of the class action and appointing Stimac's counsel as class counsel;

    d. Award Stimac and the putative class members their damages, *i.e.*, all wages, salary, benefits, or other compensation denied to or lost by them, including back pay and front pay, any monetary losses sustained by Stimac as a result of MedStar's violation of the FMLA, an equal amount of liquidated damages, interest, and attorneys' fees and costs; and

    e. Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR JURY TRIAL

Stimac demands a jury trial for all claims so triable.

Date: May 28, 2025

      // s // *Adam H. Farra*
      Adam Farra (No. 18599)
      Times Wang (No. 30858)
      FARRA & WANG PLLC
      1300 I Street N.W., Suite 400E
      Washington, D.C. 20005
      afarra@farrawang.com
      twang@farrawang.com
      (202) 505-5990

Mariyam Hussain
BERGER MONTAGUE PC
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
mhussain@bm.net
(773) 666-4316

Michael C. Dell'Angelo
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mdellangelo@bm.net
mwallin@bm.net
(215) 875-3080

*Attorneys for Thy Ma Stimac and the Putative Class*