## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THY MA STIMAC, individually and on behalf of a class of similarly situated individuals,** | |
| *Plaintiff*, | **Case No. 1:25-cv-01693-SAG** |
| v. | **CLASS ACTION** |
| **MEDSTAR HEALTH, INC.,** | |
| *Defendant.* | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND CLASS CLAIMS

Defendant, MedStar Health, Inc. ("Defendant" or "MedStar Health"), by and through undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff's Amended Complaint should be dismissed because (1) she fails to allege any injury in fact and therefore has no standing, depriving this Court of subject matter jurisdiction and (2) because, even if she did have standing, she fails to allege sufficient facts to support a Family Medical Leave Act ("FMLA") interference or retaliation claim, a Maryland common law claim of unjust enrichment, or breach of contract claim. Finally, Plaintiff's class allegations must be dismissed because, without a named Plaintiff with a concrete and particularized harm, there can be no putative class allegations.

### I.      SUMMARY OF FACTUAL BACKGROUND AS ALLEGED IN THE AMENDED COMPLAINT

Although well-pleaded facts alleged in Plaintiff's Amended Complaint must be accepted as true for purposes of evaluating a motion to dismiss under a 12(b)(6) (this is not true under 12(b)(1)), nothing in this memorandum of law should be construed as an admission by

Defendant of the truth of any allegation contained in the Amended Complaint. This is an employment-related action brought by Plaintiff Thy Ma Stimac, an occupational therapist currently employed by MedStar Health, who alleges violations of the FMLA. Specifically, Plaintiff claims that, while on an unpaid FMLA leave, she did not receive a merit-based pay increase, which she alleges amounts to a violation of the statute.[1] Based on her own allegations, MedStar Health fully met the requirements of the FMLA because it permitted Plaintiff to take FMLA-protected maternity leave, held her job open for her during that leave, and restored her to her same job, with a merit-based pay increase upon her return. Plaintiff was notified that she would receive a merit-based pay increase, effective on or around November 3, 2024. However, **before** the November 3rd effective date of that merit-based pay increase, Plaintiff exercised her FMLA rights which afforded her an ***unpaid statutory leave*** of absence due to the birth of her child. Once she returned from that leave, as Plaintiff herself alleges, MedStar Health restored her to the same position she held when her leave commenced. Moreover, and critically here, just as Plaintiff alleges, consistent with the FMLA, when she returned from her ***unpaid statutory leave***, her merit-based pay increase took effect immediately. These facts do not establish an injury-in-fact, and thus, do not identify a case or controversy for this Court to decide, and indeed fail to state a claim upon which relief can be granted.

Since at least 2017, Plaintiff has been employed by MedStar Health as an occupational therapist, currently working at the Union Memorial Hospital d/b/a MedStar Union Memorial Hospital. *See* ECF No. 11 ¶¶ 5, 16. As an employee (also sometimes referred to as an "associate"

---

[1] The FMLA provides an eligible employee (one who has been employed by the employer for 12 months and worked at least 1,250 hours during the previous 12 months)*, see* 29 USC § 2611(2), with up to 12 workweeks of leave during a 12-month period for (a) childbirth and the need to care for the child; (b) placement of a child through adoption or foster care; (c) caring for a family member with a serious health condition; (d) the employee's serious health condition; or (e) a qualifying exigency associated with a family member's active duty status; for the employee. *See* 29 USC § 2612(a)(1).

in MedStar Health's policies), Plaintiff, and indeed all associates, undergo an annual performance evaluation. *Id.* ¶¶ 20-27. That evaluation determines whether an associate will be eligible for a merit-based pay increase and, if so, what percentage of an increase they will receive. *Id.* ¶ 21. More specifically, to qualify for a merit-based pay increase, an employee must receive a specific rating on their annual performance evaluation. *Id* ¶ 26. Thus, by Plaintiff's own admission, *not every associate* receives an annual pay raise, which makes the merit increase a conditional increase.[2] *See id* (alleging that only those associates who receive a performance rating of "'Exceptional'" or "'Strong'" receive a merit-based pay increase, while those who receive a performance rating of "'Needs Improvement'" do not receive an increase).

MedStar Health employs an overall rating scale for its annual performance evaluations of "'Exceptional,' Strong,' (also called 'Standard"), and 'Needs Improvement.'" *Id.* ¶ 21. Supervisors evaluate their employees based on various factors, including whether or not the employee's performance resulted in "'incomparable (and unexpected) work products that deliver business and/or patient outcomes far beyond expectations' or '[d]emonstrat[ing] strong leadership.'" *Id.* ¶ 22 (alterations in original). Thus, according to Plaintiff's own allegations, the annual performance evaluation does not amount to an ***unconditional pay increase*** and is not guaranteed for associates, because supervisors rate and evaluate each employee's performance based on various metrics, which then drives the overall ratings and corresponding merit-based pay increase (if applicable).

As part of the performance evaluation process, associates receive their annual

---

[2] The regulations implementing the FMLA establish that when an employee ***returns to work*** from FMLA leave and is returned to an equivalent position, instead of the same position they held before leave commenced, they are entitled to any "*unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases.*" 29 CFR § 825.215(c)(1) (emphasis added). Contrarily, with respect to conditional pay increases for an employee who returns to work and is returned to an equivalent position, such as discretionary bonuses and merit-based increases, those are applied "*in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave." Id.* (emphasis added).

3

performance evaluations during the annual performance period, which usually starts around June 30th of each year. *Id.* ¶ 23. Around the following September of each year, employees are advised of the tier they were rated for the relevant performance period in a meeting with their supervisors. *Id.* ¶ 24. MedStar provides a merit-based pay increase based on the tier in which the employee is rated. *Id.* Specifically, the merit-based pay increases range from 0% to 4.5% — with those who are rated "Exceptional" receiving a higher merit-based pay increase than those rated "Strong," and those who receive a "Needs Improvement" are ineligible for a merit-based pay increase at all. *Id.* ¶¶ 25-26.[3] In September 2024, employees who were rated "Exceptional" were informed that they would receive a 4.5% merit-based pay increase in their November 22, 2024, paycheck. *Id.* ¶ 27. Likewise, those rated "Strong" were informed they would receive a 3.5% merit-based pay increase in their November 22, 2024, paycheck. *Id.*

Plaintiff was explicitly informed in September 2024 that she was rated a "Strong" and would therefore receive a 3.5% merit-based pay increase, effective November 3, 2024. *Id.* ¶¶ 30, 93.[4] However, before November 3, 2024, the effective date of the merit-based pay increase for all associates, Plaintiff took an ***unpaid FMLA leave of absence*** starting on October 14, 2024, for maternity leave. *Id.* ¶¶ 33-34. She remained on that ***unpaid FMLA leave of absence*** until January 6, 2025. *Id.* ¶ 34.

---

[3] Plaintiff attempts, without any factual support thereof, to categorize the raise as a "cost-of-living," raise, *id.* ¶ 25, but the facts as alleged by Plaintiff contradict her own conclusory statement. Further, Plaintiff cites to the Social Security Administration ("SSA"), Cost of Living Increases adjustments ("COLA") in a footnote. *See id.* n.1. Yet, Plaintiff makes no connection to this citation with the merit-based pay increases provided to eligible MedStar Health associates. Indeed, for the relevant year, 2024, the COLA was 2.5%, but according to Plaintiff's allegations MedStar Health provided eligible associates with a merit-based pay increase that ranged between 3.5 and 4.5 percent, *id.* ¶ 27, well above the SSA's COLA.

[4] Plaintiff alleges that she "does not know of any MedStar [Health] employees [who] did not receive a yearly increase." *Id.* ¶ 29. Yet, she makes no allegation that she would be privy to such information, particularly given the fact that she makes no allegations that she had access to every MedStar Health associates' annual performance evaluation, which drives the merit-based pay increases. Nor does she make any allegations that she performed any other associate's annual performance review. Thus, her lack of knowledge ***does not*** mean that associates were not rated a "Needs Improvement" during the relevant year, making them ineligible for a merit-based pay increase.

Plaintiff alleges that MedStar Health associates are required to "use their accrued paid time off (PTO) while they take FMLA," and "it pays [the] employee's full salary while the employee is out on PTO." *Id.* ¶¶ 36-37. While on leave, Plaintiff alleges that she used a combination of short-term disability ("STD") payments, which is a wage replacement benefit provided by MedStar Health to eligible employees who are out of the office for a variety of reasons, and her PTO. *Id.* ¶¶ 38-40. Specifically, according to Plaintiff, she used PTO for the first five (5) days after she began her maternity leave on October 14, 2024. *Id.* ¶ 43. Thereafter, Plaintiff alleges that after the expiration of these five (5) PTO days, she then used the STD benefits, which compensated her at 60% of her usual pay, for the next six (6) weeks. *Id.* ¶ 44. Plaintiff next alleges that from November 25, 2025, until January 6, 2025, she used the remainder of her PTO balance to cover her leave. *Id.* ¶ 45.

Plaintiff alleges that from November 25, 2025, through January 6, 2025, MedStar Health should have paid her PTO leave at the increased rate consistent with the merit-based pay increase. *Id.* ¶¶ 45-46. Despite being on continuous ***unpaid FMLA leave*** and not working for MedStar Health from October 14, 2024, through January 6, 2025, Plaintiff now claims she did not receive a merit-based pay increase in her November and December 2024 paychecks. *Id.* ¶ 47. According to Plaintiff, from November 25, 2024, until January 6, 2025, Plaintiff was paid $3,378.40 per paycheck, instead of $3,496.64 (the purported amount if the merit-based pay increase was applied). *Id.* ¶ 48. Yet, Plaintiff makes no allegations that she worked during any period between November 25, 2024, and January 6, 2025, and ***actually earned PTO at the alleged increased rate***. Plaintiff alleges MedStar Health "denied [] her accrued and earned increase for approximately six (6) weeks ***because she was on FMLA leave***." *Id.* ¶ 50 (emphasis added). But Plaintiff readily admits that immediately upon her return from her unpaid leave, she

received the full benefit of her merit-based pay increase. *Id.* ¶ 56. That is, "her paycheck for January 6, 2025[,] reflected the 3.5% [merit-based pay] increase." *Id.*

Plaintiff alleges that on January 6, 2025, she inquired about why she did not receive a raise in November and December (despite not working and being on an unpaid FMLA leave during this period), using MedStar Health's "'AskMyHR'" function. *Id.* ¶ 52. She next claims that between January 6, 2025, and January 21, 2025, Tia M. Mitchell ("Mitchell"), a representative from MedStar Health's human resources department, told her that it was "MedStar's 'standard policy and approach for associates on a leave of absence' [] to deny the annual raise ***while the employee is out on leave***, and to apply it when the employee returns from leave." *Id.* ¶ 53 (emphasis added). Plaintiff claims that she informed Mitchell "the practice was 'concerning to [her] as it seems to discriminate against employees who have exercised their right to take FMLA leave.'" *Id.* ¶ 54. Yet, she makes no allegation that anyone from MedStar Health took any action against her because of this statement, or that any FMLA benefit was denied, restrained, or otherwise interfered with. Even though she was on an unpaid FMLA leave, ***not working*** during that time, and not denied anything, Plaintiff incredulously alleges that she was not "provided backpay for the pay she was denied while she was out on leave." *Id*. ¶ 57.

Plaintiff emphatically alleges that MedStar Health withheld "raises for employees who are on FMLA leave ***solely because they are out on FMLA leave***." *Id.* ¶ 4 (emphasis added); *see also* ¶ 83 (alleging that "MedStar unilaterally decided that it would not pay Stimac her raise solely because Stimac was out on FMLA (maternity) leave."). But as explained below, these allegations are wholly incorrect.

## II.    PERTINENT FACTS THAT DEPRIVE THIS COURT OF SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO CASE OR CONTROVERSY

As outlined above, Plaintiff asserts that Medstar Health withholds "raises for employees

who are on FMLA leave **solely because they are out on FMLA leave.**" *Id.* ¶¶ 14, 83 (emphasis added). However, as Kathy Miles outlines in her declaration, and to which Plaintiff's allegations do not dispute, there is no policy denying or withholding raises for individuals **because they are on FMLA leave**. Specifically, for an associate to be eligible for a merit-based pay increase, they must undergo the performance review process, which evaluates the associate's performance between July 1st and June 30th of each year. *See* Ex. A ¶ 6, Declaration of Kathy Miles ("Miles Decl."). Only associates rated as having Exceptional Performance or Strong Performance are eligible for a merit-based pay increase. *Id.* Whereas associates who are rated as Needs Improvement are ineligible for a merit-based pay increase. *Id.* The deadline for supervisors to approve their associates' performance ratings and merit-based increases (for eligible associates) for 2024 was October 23, 2024. *Id.* Once supervisors approved the ratings and respective merit-based increases, MedStar Health then approved the merit-based pay increases on November 3, 2024. *Id.* Merit-based pay increases for 2024 were reflected in the associates' November 22, 2024, paycheck, unless there was some intervening factor that postponed the effective date of the merit-based pay increases. *Id.*

More specifically, the effective date of merit-based pay increase may be postponed for associates on a leave of absence – whether that be an FMLA-approved leave of absence, an ADA-approved leave of absence, an approved personal leave, or on another approved temporary leave of absence. *Id.* Such policy applies depending on *when* the associate *initiates* the leave of absence, compared with *when* the performance review process begins or the effective date of the merit-based pay increase. For instance, if an associate *initiates* their leave of absence *before* the performance review period begins, that associate's review period must be completed within 30 days of their return from their leave of absence to determine the associate's eligibility for a

merit-based pay increase. *Id.* Notably, this policy applies to any leave of absence, not solely to FMLA leave. *Id.* Likewise, if an associate *initiates* their leave of absence after undergoing the performance review process but *before* the effective date of their merit-based pay increase, that associate's merit-based pay increase becomes effective on the day of their return from leave of absence. *Id.* Again, this policy applies to any leave of absence, not solely to FMLA leave. *Id.*

This policy is consistent with the STD policy. MedStar Health's STD benefit applies to approved non-work-related accidents and injuries, as well as other leaves of absence, assuming the associate qualifies for the benefit. *Id.* ¶ 5. MedStar Health's STD benefit is a fully funded program that provides wage replacement for eligible associates up to 60% of the associate's wages during qualifying leaves of absence, which applies to more than just FMLA leave. *Id.* When an associate seeks to use the STD benefit, the 60% wage replacement is calculated based on the associate's salary on the day before the associate's scheduled leave of absence. *Id.* For instance, if an associate's qualifying leave began on October 1, 2025, their STD replacement wages would be calculated based on the associate's salary earned on September 30, 2025.

Plaintiff submitted documentation to the TPA on September 19, 2024 – well before the effective date of any merit-based pay increase – advising that her FMLA leave would begin on October 10, 2024 – well before the effective date of any merit-based increase. *Id.* ¶ 7. Indeed, Plaintiff took **unpaid FMLA-approved leave** from October 14, 2024, through January 6, 2025. *Id.* Plaintiff's **unpaid FMLA-approved leave** also predated the deadline for her supervisor to approve her performance ratings and merit-based pay increase, as well as the date MedStar Health would approve merit-based pay increases. *See id.* ¶ 6 (supervisor's deadline to approve performance ratings and merit-based pay increases was October 23, 2024, and the date MedStar Health approved merit-based performance pay increases was November 3, 2024). Further,

8

Plaintiff did not return to work until January 6, 2025, and her merit-based pay increase was effective that same day. *Id.* ¶ 7. At the time Plaintiff took an ***unpaid FMLA-approved leave***, she was making $42.23 per hour. *Id.* Thus, any STD benefits and/or prescheduled use of PTO were based on this rate. *Id.* ¶¶ 5-6.[5] Once Plaintiff returned to work on January 6, 2025, and began accruing PTO, her hourly rate was immediately increased to $43.708 an hour. *Id.* ¶ 7.

## III.    ARGUMENT

When Plaintiff's Amended Complaint is read in context, it is clear that Plaintiff is attempting to turn an abstract concept into a case or controversy. That is, Plaintiff, who went out on an ***unpaid approved FMLA leave of absence*** beginning on October 14, 2024, scheduled to use PTO in November 2024, after her STD benefits were expected to be exhausted. *See* ECF No. 11 ¶ 45 (stating, "[o]nce the short-term benefit ran out, Stimac began using the rest of her PTO…[from] November 25, 2024, until January 6, 2025"). Notably, that PTO was earned ***before*** the effective date of any merit-based pay increase. Yet, Plaintiff claims, without any statutory or legal authority, that MedStar Health was required to effectuate her merit-based increase during her unpaid leave and pay her PTO hours at the higher rate beginning or around November 25, 2024. *Id.* ¶¶ 46-50. Notably, she does not challenge the fact that her STD benefit was paid at the rate earned at the time she took her leave ($42.23 per hour) and was not adjusted to reflect any merit-based pay increase she claims MedStar was entitled to effectuate for her PTO. *See* Ex. C (Plaintiff's pay stubs reflecting that she received STD benefits calculated at the rate per MedStar's policy and not adjusted to reflect any merit-based pay increase). And that is for good reason: no requirement within the FMLA affords Plaintiff any greater rights than she would have

---

[5] Notably, Plaintiff alleges that she was required to use PTO during her *unpaid FMLA-approved leave. See* ECF No. 11, ¶¶ 36-37. However, this is simply inaccurate. Associates have the choice to use PTO to cover any portion of their unpaid leave absence. *See* Miles Decl. ¶ 5. Further, this is supported by the notes from the TPA concerning its discussion with Plaintiff where she initially declined to use PTO. *See* Ex. B (TPA Notes) at 2.

had without taking leave – especially given that the policy at issue applies to **all leave types** – not solely FMLA leave as alleged.

Because the allegations within the Amended Complaint fail to '"present a real, substantial controversy'" or even '"a dispute [that is] definite and concrete, not hypothetical or abstract,'" there is no case or controversy, and this Court is deprived of subject matter jurisdiction. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) (quoting *Railway Mail Assn. v. Corsi*, 326 U.S. 88 (1945)). Said differently, without "a case or controversy, the courts have no business deciding [the case]." *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 771 F. Supp. 3d 717, 763 (D. Md. 2025) (internal quotations and citations omitted) (alteration in original). Thus, the Court should dismiss the Amended Complaint, including the class allegations, under Federal Rule of Civil Procedure 12(b)(1).

Likewise, even if this Court somehow determines that it has subject matter jurisdiction over this hypothetical and abstract grievance concerning the FMLA, the case should still be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's allegations, even if taken as true, clearly show that MedStar Health did not violate the FMLA. Firstly, by Plaintiff's own admission, the policy that she claims harms those solely on FMLA leave does no such thing, as she admits that she was told that the policy applies to all leaves of absence, not solely FMLA leave. *See* ECF No. 11 ¶¶ 7, 53. Secondly, because "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009), when applied to the facts alleged, shows that the policy does not "categorically den[y] employees on FMLA leave the raise they would otherwise be entitled to" as alleged. *See* ECF No. 11 ¶ 58. Instead, as will be discussed more fully below, the policy focuses on the *timing of the leave of*

*absence* – any leave of absence, not simply FMLA – and does not focus on the *type of leave* as alleged. Further, common sense shows that the policy does not harm, injure, or otherwise penalize individuals solely because of their FMLA status, because, depending on when the leave of absence is initiated, it simply adjusts the effective date of a merit-based pay increase to coincide with their return-to-work date.

Plaintiff cannot make out a claim for unjust enrichment because she cannot show that MedStar Health retained something that belonged to her without a benefit in return. Specifically, she claims MedStar Health agreed to provide her a raise, withheld that raise while she was on an unpaid FMLA leave, and retained the benefit of Plaintiff's employment and raise during this time. *Id.* ¶¶ 81-83. But Plaintiff's allegations are hypothetical and place the cart before the horse. Plaintiff had not worked a single day during the period when her merit-based pay increase would have initially been implemented. On the date she returned to work at MedStar Health and began providing services, she received the benefit of the merit-based pay increase. Plaintiff's allegations show that it was she who attempted to be unjustly enriched by receiving the benefit of a merit-based pay increase during a period when she was not working for MedStar Health, and quite frankly, had the option of not returning from that leave. Lastly, Plaintiff's allegations fail to establish an enforceable contract, and thus, her breach of contract claim must be dismissed.

Thus, dismissal of the Amended Complaint is warranted under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## A.    Legal Standards for a Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule marks a "notable and generous departure from the hypertechnical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 677-678.

Under Rule 12(b)(1), "a party may move to dismiss a claim on the argument that the presiding court lacks subject-matter jurisdiction." *Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 778–79 (D. Md. 2022). It is the Plaintiff's burden to prove that subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must be dismissed if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A motion to dismiss should be granted where the complaint either fails to allege all the elements for a cause of action or sufficient facts to support these elements. *See Bass v. E.I. DuPont de Nemours & Co*., 324 F.3d 761, 765 (4th Cir. 2003), cert. denied, 540 U.S. 940 (2003). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "the tenet that a Court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Thus, to avoid dismissal at the pleading stage, the complaint must contain well-pleaded factual allegations that plausibly give rise to an entitlement to relief. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). *Twombly* and *Iqbal* emphasize that even under a notice pleading regime, a complaint must contain sufficient evidentiary facts to raise a plausible – as opposed to just conceivable – inference that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680-81. In *Twombly*, the Supreme Court addressed the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555-56. To survive a motion to dismiss under *Twombly*, a plaintiff must allege enough facts "'to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 547).

**B.      Plaintiff Does Not Have Standing Because There Is No Injury in Fact, Depriving this Court of Subject Matter Jurisdiction**

It is well settled that "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). This doctrine "ensure[s] that federal courts do not exceed their authority as it has been traditionally understood." *Id.* "'One element of the case-or-controversy requirement is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Spokeo Inc.,* 578 U.S. at 338. The injury in fact is "the '[f]irst and foremost' of standing's three elements," and "is a constitutional requirement." *Id.* at 338-39 (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)) (alteration in original). This requires a showing of "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).

"In other words, to satisfy Article III, a plaintiff must have a sufficient 'personal stake' in the alleged dispute and have an alleged injury that is particularized as to h[er]." *Menders v. Loudoun Cnty. Sch. Bd.*, 65 F.4th 157, 163 (4th Cir. 2023) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Said differently, "federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Nor do they "possess a roving commission to publicly opine on every legal question." *Id.* And they certainly do not serve to provide "general legal oversight of the Legislative and Executive Branches, or of private entities." *Id.* at 423-24. Lastly, it is well settled that "federal courts do not issue advisory opinions," *id.* at 424, but instead "only resolve real controversies with real impact on real people." *Menders*, 65 F.4th at 163. Importantly, standing or evaluation of the "'case-or-controversy requirement'" is "'based on [the Plaintiff's] complaint'" and through her pleading, she "'must establish that [she has] standing to sue.'" *Id.* at 162 (quoting *Raines*, 521 U.S. at 818).

As established herein, while Plaintiff might disagree with or dislike that the FMLA does not require paid leave, such amounts to, at most, a policy concern, "[a]nd concerns about policy should be made to policymakers, not judges." *Menders*, 65 F.4th at 164. Further, and critically for this analysis, it is undisputed that the complained-of policy does not apply ***solely because*** Plaintiff was on FMLA leave, but instead, treats all leaves of absence equally (depending on

their timing), and therefore cannot violate the FMLA. Thus, as will be established, because Plaintiff's Amended Complaint fails to identify a concrete particularized harm, her suit under the FMLA must be dismissed for lack of subject matter jurisdiction.

      **1.**    *Plaintiff requested and received FMLA leave in accordance with the law.*

As an initial matter, the FMLA entitles an "eligible employee" to take "a total of 12 workweeks of leave during any 12-month period" for one of the statutorily protected reasons. 29 U.S.C. § 2612(a)(1), which include maternity leave.[6] "Notably, 'the FMLA does not entitle eligible employees to paid leave.'" *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 581 (D. Md. 2010) (quoting *Glunt v. GES Exposition Servs., Inc.*, 123 F.Supp.2d 847, 870 (D. Md. 2000). The statutory right is to the leave time itself and not to any pay during the leave. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294 (4th Cir. 2009) (the FMLA unequivocally provides eligible employees with "a substantive (or "prescriptive") right to unpaid leave in certain situations," one such situation being maternity leave) (internal quotations and citations omitted).

Here, the facts alleged in the Amended Complaint undeniably establish that Plaintiff requested and received unpaid FMLA leave due to the birth of a child. Specifically, Plaintiff alleges that she commenced her unpaid FMLA leave of absence on October 14, 2024. *See* ECF No. 11 ¶¶ 33-34, 43. Indeed, MedStar Health's records confirm that, as early as September 19, 2024, Plaintiff advised the TPA that she intended to take FMLA leave beginning October 10, 2024, and that she commenced her unpaid FMLA leave on October 14, 2024. *See* Miles Decl. ¶ 7. Plaintiff further alleges that she returned from an unpaid FMLA leave of absence on January 6, 2025. ECF No. 11 ¶¶ 34, 45, 48, 56. Again, this comports with MedStar Health records. *See* Miles Decl. ¶ 7. There are no allegations that MedStar Health refused or otherwise prevented her

---

[6] There is no dispute that Plaintiff met the definition of *eligible employee* during the relevant period of time.

15

from taking this statutorily protected leave from October 14, 2024, until January 6, 2025. Nor are there any allegations that MedStar Health overly complicated her ability to request and receive her unpaid FMLA leave.

As the Fourth Circuit has made clear, the FMLA provides eligible employees with "substantive rights, and their accompanying protections," which are identified in 29 U.S.C. § 2615(a)(1). *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006). This amounts to two types of rights and protections:

> First, covered employees who take a leave of absence for family or medical reasons qualify for numerous substantive entitlements. Specifically, these employees are entitled to a total of 12 workweeks of leave during any 12–month period for family- and health-related matters, and have a right to be restored by the employer to the position of employment held by the employee when the leave commenced *or* to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

*Yashenko*, 446 F.3d at 546 (internal quotations and citations omitted). These substantive rights and accompanying protections are considered "*prescriptive,* 'set[ting] substantive floors for conduct by employers, and creating entitlements for employees.'" *Id.* (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)) (alternations and emphasis in original).

Here, as to the first prescriptive right and protection – the ability to take statutorily protected FMLA leave – Plaintiff's own allegations show that she requested and received such. Thus, there can be no case or controversy on this issue, and as such, she lacks standing to challenge MedStar Health's approval of her requested FMLA leave. As established below, she also lacks standing regarding the second prescriptive right and protection. I

        **2.** *Plaintiff was restored to her same position upon her return from FMLA leave.*

As to the second prescriptive right and protection – restoration to her same or equivalent position *after her return from her FMLA leave* – Plaintiff's own allegations establish that she

16

remained an occupational therapist. *See* ECF No. 11 ¶¶ 5, 14, 16 (stating that Plaintiff "has been an occupational therapist for MedStar since 2017."). Indeed, the right to restoration to the same or equivalent position is only triggered upon *an employee's return* to work. *See* 29 U.S.C. § 2614(a)(1)(A)-(B) (stating that any "eligible employee who takes leave" under the FMLA "shall be entitled, ***on return from such leave***" to restoration to the same position or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.") (emphasis added).

Plaintiff's own allegations establish that she remained an occupational therapist. Thus, there can be no case or controversy on this issue, and, as such, she lacks standing to challenge MedStar Health's compliance with the FMLA by restoring her to the same position she held before her leave commenced.

**3.** *Plaintiff did not lose any employment benefit solely because she went on an unpaid FMLA leave.*

The thrust of Plaintiff's alleged injury is based on her distorted perspective that she was entitled to a merit-based pay increase *during* her unpaid FMLA leave. More specifically, she contends that "[b]y withholding raises from employees who are out on FMLA leave ***solely because they are out on FMLA leave***, MedStar [Health] interferes with the exercise of its employees' rights under the FMLA." ECF No. 11 ¶ 4 (emphasis added). However, Plaintiff's claim does not align with her own allegations, the undisputed evidence presented by MedStar Health in support of this Motion to Dismiss, or the law. Let's start with the law.

The FMLA states that the "taking of leave. . . shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614 (a)(2). As established *supra*, there is no prescriptive right to paid FMLA leave. *See Bosse*, 692 F. Supp. 2d at 581; *Dotson*, 558 F.3d at 294. As the Fourth Circuit has recognized, FMLA

"contains limitations providing that 'nothing in this section shall be construed to entitle any restored employee to ... any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'" *Yashenko*, 446 F.3d at 547 (quoting 29 U.S.C. § 2614(a)(3)(B)). The operative phrase is *any restored employee*. Section 2614 expressly conditions the employment and benefits protection afforded to employees based on their "***return from such leave.***" *See* 29 USCA § 2614(a)(1) (emphasis added). DOL regulations emphasize this concept. *See* 29 CFR § 825.214 (establishing that the protections are based on the employee's "return from FMLA leave.").

A federal Georgia court similarly rejected an alleged FMLA violation in a case where the plaintiff alleged, he did not receive a discretionary bonus during his FMLA leave when the company delayed his review process (and awarding of the bonus) until his return from leave. In doing so, the Court stated that "[a] central point of the FMLA is that employees on leave are not entitled to special privileges." *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1349 n. 152 (N.D. Ga. 2006) (citing 29 U.S.C. 2614(a)(3)(B)). That court recognized that the statute does not provide any greater benefits to those on FMLA leave than any other leave and expressly highlighted that the DOL's comments to its FMLA regulations permit "employers to delay the pay increase by the amount of time the employee has spent on FMLA leave." *Id.* Those comments state:

> To the extent an employee who takes FMLA leave meets all the qualifications to receive these types of bonuses up to the point that FMLA leave begins, ***the employee must continue to qualify for this entitlement upon returning from FMLA leave***. In other words, the employee may not be disqualified from perfect attendance, safety, or similar bonus(es) because of the taking of FMLA leave. (See §825.220 (b) and (c)). A monthly production bonus, on the other hand, does require performance by the employee. ***If the employee is on FMLA leave during the period for which the bonus is computed, the employee is not entitled to any greater consideration for the bonus than other employees receive while on paid***

*or unpaid leave (as appropriate) during the period*. Because restored employees are not entitled to accrue seniority during a period of FMLA leave, pay increases based on performance reviews conducted after 12 months of completed service with the employer may be delayed by the amount of unpaid FMLA leave an employee takes during the 12-month period (in the absence of policies that treat other forms of unpaid leave differently).

The Family and Medical Leave Act of 1993, 60 FR 2180-01 (emphasis added). Thus, the law, including the regulations implementing the FMLA, expressly allows employers to delay the entitlement to bonuses based on performance until the employee returns from leave, provided the policy is applied consistently for other unpaid leave. It is undisputed that Plaintiff does not allege that MedStar Health disqualified her from receiving the merit-based pay increase.

And Plaintiff cannot show an injury-in-fact. The facts here as alleged in the Amended Complaint and articulated in Kathy Miles's declaration show full compliance with the law. For instance, Plaintiff states that MedStar Health's "'standard policy and approach for *associates on leave of absence*'…is to deny any annual raise to those employees until they return from leave." *See* ECF No. 11 ¶¶ 7, 53 (emphasis added). Kathy Miles makes clear that this policy applies not only to FMLA leaves of absence but to all types of leaves of absence, including ADA, personal, and other temporary leaves. *See* Miles Decl. ¶ 6. In fact, Plaintiff reemphasizes this point, highlighting that this policy applies to those on "maternity leave, disability leave, and other medical leave." ECF No. 11 ¶ 2.[7] Even more fatal to Plaintiff's alleged injury is the fact that her entitlement to her raise was effective immediately upon her return. *See* ECF No. 11 ¶¶ 7, 56 (confirming that upon her return from her unpaid FMLA leave, her merit-based pay increase was

---

[7] It should be noted that "'[d]isability' under the ADA and 'serious health condition' under the FMLA are distinct concepts that require different analyses." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir. 2001) (quoting 29 C.F.R. § 825.702(b) (2000)). Thus, simply because one is on a medical leave or ADA leave does not implicate that it is FMLA leave. Likewise, a request for leave under the FMLA does not equate to a request for leave under the ADA, and vice versa. *See McCormack v. Blue Ridge Behav. Healthcare*, 523 F. Supp. 3d 841, 858 (W.D. Va. 2021), *aff'd sub_nom. McCormack v. Blue Ridge Behav. Healthcare, Inc.*, No. 21-1447, 2022 WL 16630565 (4th Cir. Nov. 2, 2022) (collecting cases).

immediately applied); *see also* Miles Decl. ¶ 7 (same); Ex. C at 6 (paycheck confirming that she received her merit-based pay increase in her first paycheck upon her return).

Thus, Plaintiff's Amended Complaint confirms she never lost any employment benefit she accrued before she went on unpaid FMLA leave ***when she was restored to her position upon her return.*** The Amended Complaint also confirms that FMLA leave is not treated more detrimentally than any other unpaid leave of absence. Therefore, Plaintiff has no standing to sue MedStar Health for complying with its obligations of restoring her to her same position with the same benefits she accrued before she went on leave. Said differently, Plaintiff cannot show that she was harmed or otherwise injured by the delay in the effective date of her merit increase, and as such, she does not have standing to bring a lawsuit under the FMLA based on her Amended Complaint. To rule otherwise or even take Plaintiff's allegations at face value – that she was entitled to receive a merit-based pay increase while on unpaid FMLA leave – would give her more rights and benefits than the law requires and is contrary to the statute's plain language. *See* 29 US.C. § 2614(a)(3)(A) (stating that an employee on FMLA leave is not entitled to "the accrual of any seniority ***or employment benefits during any period of leave***) (emphasis added); *see also Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (stating that "being on FMLA leave does not provide an employee any greater rights than he or she would have had without taking leave.").

Because Plaintiff has not identified any concrete and particularized harm, she lacks standing to bring this lawsuit under the FMLA, and the Court should dismiss it for lack of subject-matter jurisdiction.

C.    **Plaintiff Fails to Allege Sufficient Facts to Support Any Violations of the FMLA and Fails to State a Claim Upon Which Relief Can Be Granted**

20

Even if the Court determines it has standing, Plaintiff's Amended Complaint still fails to allege sufficient facts to state a claim upon which relief can be granted. As an initial matter, Plaintiff seems to conflate an FMLA interference claim with an FMLA retaliation claim, as evidenced by her attempt to lump them together under Count I of the Complaint. *See* ECF No. 11 at 8, ¶¶ 51-57 (Plaintiff identifying Count I as "Violation of the Family and Medical Leave Act 29 U.S.C. § 2617(a)(2)"). However, FMLA "[i]nterference and retaliation are distinct causes of action under the FMLA and ***must be pled individually***." *Twine v. AT&T, Inc.*, 755 F. Supp. 3d 959, 981–82 (E.D. Va. 2024) (citing *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 707, (4th Cir. 2024)) (emphasis added). In addition to the fact that Plaintiff failed to plead the causes of action separately, she cannot prevail under either theory.

### 1. *Plaintiff fails to make out an FMLA interference claim.*

It appears that Plaintiff is attempting to allege a FMLA interference claim under 29 U.S.C. § 2615(a)(1) in Count I of the Amended Complaint. However, even when liberally construed, the Amended Complaint fails to support such a claim with sufficient factual allegations, and as such, the claim must fail as a matter of law. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). *See Sharma v. Howard County*, Civ. No. 12–cv–2269–JKB, 2013 WL 530948, at *5 (D. Md. Feb. 12, 2013). To state a claim for FMLA interference, a plaintiff-employee "must plead sufficient factual content to support the elements of a prima facie interference case." *Townes v. Maryland Department of Juvenile Services*, Civ. No. JKB–15–1093, 2015 WL 5928114, at *4-5 (D. Md. Oct. 8, 2015). Specifically, a plaintiff-employee must allege the following: (1) that they were an eligible employee under the FMLA; (2) that their employer was covered by the FMLA; (3) that they

were entitled to leave under the FMLA; (4) that they gave the employer adequate notice of their intention to take leave; and (5) that the employer denied the employee the FMLA benefits to which they were entitled. *Scott v. Caroline County*, Civ. No. ADC-20-0603, 2020 WL 5653398, at *5 (D. Md. Sept 22, 2020) (citing *Sherif v. Univ. of Maryland Med. Ctr.*, 127 F. Supp. 3d 470, 477 (D. Md. 2015) (quotations omitted)); *Townes*, 2015 WL 5928114, at *4-5 (same). "Importantly, a plaintiff [alleging FMLA interference] must also show prejudice." *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014). Simply put, "the FMLA provides no relief *unless the employee has been prejudiced* by the violation." *Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 796 (4th Cir. 2023), *cert. denied sub nom. Baker v. CSX Transportation, Inc.*, 144 S. Ct. 825, 218 L. Ed. 2d 32 (2024) (emphasis in original).

Here, Plaintiff does not plead any facts sufficient to show that she was denied the use of any benefit to which she was entitled under the FMLA. To the contrary, Plaintiff specifically pleads that she used the FMLA leave she was entitled to. She pleads that shortly after meeting with her supervisor in September 2024, who informed her of her performance rating, she began unpaid FMLA leave on October 14, 2024. ECF No. 11 ¶¶ 33-34, 43. Thus, by her own admission, because Plaintiff took and was not denied the FMLA leave that she requested, she cannot show that she was prejudiced. *See Downs*, 21 F. Supp. 3d at 619 (stating that "because [Plaintiff] failed to allege that she was actually denied any FMLA benefits, [she] has failed to allege any prejudice related to FMLA interference.").

Moreover, Plaintiff does not allege any facts whatsoever that anyone from MedStar Health prevented or so much as discouraged her from taking leave or subjected her to any ill treatment because she sought to take leave. *See e.g. Walker v. Gambrell,* 647 F. Supp. 2d 529, 539 (D. Md. 2009) ("Defendants clearly did not interfere with Plaintiff's right to take leave as

evinced by. . . absence of any allegation by Plaintiff that Defendants tried to stop her from taking leave."). Indeed, Plaintiff admits that she met with her supervisor before the commencement of her unpaid FMLA leave to have her performance discussion and receive her overall performance rating in September 2024. She does not allege that the supervisor, let alone anyone from MedStar Health, attempted to prevent or discourage her from taking maternity leave. In *Townes v. Maryland Department of Juvenile Services*, Civ. No. JKB–15–1093, 2015 WL 5928114, at *4-5 (D. Md. Oct. 8, 2015), the Court evaluated the defendant's argument that the plaintiff's FMLA interference claim should be dismissed because she failed to plead facts showing she was denied an FMLA benefit to which she was entitled. The Court dismissed the plaintiff's FMLA interference claim on the rationale that "Plaintiff cannot point to any specific FMLA benefits that she was denied." *Id*. at *5.

Plaintiff's attempt to fabricate an interference claim by claiming that she should have been paid a merit-based pay increase effective *after* she went on FMLA leave must also fail. Indeed, it is well settled that "'the FMLA *does not entitle eligible employees to paid leave*.'" *Bosse*, 692 F. Supp. 2d at 581. (emphasis added). The FMLA requires only that an employer continue group health care coverage and restore the employee to their same or equivalent position upon their return. (see *Bosse*, 692 F. Supp. 2d at 581 (citing 29 U.S.C. § 2614(a)(1), (c)(1)) stating that "the employer must continue to provide any group health care coverage that the employee received while working, and *it must restore the employee* to his or her previous position or its equivalent *upon h[er] return*.") (emphasis added). The Amended Complaint fails to allege that MedStar discontinued or interfered with Plaintiff's health insurance during her unpaid leave, and, by her own admission in the Amended Complaint, Plaintiff was restored to her same position upon her return.

Accordingly, Plaintiff cannot make out a claim that MedStar Health interfered with her rights under the FMLA. Not only was she restored to her same position, but she immediately received her merit-based pay increase upon her return, as discussed *supra*.

**2.** *Plaintiff fails to make out an FMLA retaliation claim.*

To the extent Plaintiff is attempting to allege an FMLA retaliation claim under 29 US.C. § 2615(a)(2), that too must fail. To make a prima facie showing of a claim of retaliation under the FMLA, a plaintiff's complaint must show (1) that she engaged in a protected activity, (2) that her employer took adverse action against her, and (3) that the adverse action was causally connected to her protected activity. *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 629 (D. Md. 2013) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)). "[A] causal connection ... exists where the employer takes adverse employment action against an employee *shortly after* learning of the protected activity." *Id*. at 630. In assessing FMLA retaliation claims, courts apply the Title VII retaliation standard. *Twine*, 755 F. Supp. 3d at 983 ("Retaliation claims brought under the FMLA are analogous to those brought under Title VII.").

In this case, while Plaintiff has alleged that she took an FMLA leave of absence (and therefore engaged in protected activity), she has not identified any adverse action associated with her taking FMLA leave. By her own admission in the Amended Complaint, Plaintiff was not disciplined, discharged, denied a promotion, or otherwise harmed because she took FMLA leave. *See* ECF No. 11 ¶ 18 ("Stimac has never been disciplined or reprimanded by her superiors at MedStar."). Instead, Plaintiff asserts that she somehow suffered an adverse action in not receiving her annual merit-based pay increase in November and December 2024, even though she was out on an unpaid leave from October 14, 2024, until January 2025, when she pre-

scheduled PTO she earned before taking unpaid FMLA leave. *Id.* ¶¶ 47-49.[8]

But this argument must fail because she does not allege any facts to show that delaying the effective date of merit-based pay increases for associates who initiate their leave of absence (any – not simply FMLA) ***before*** the date the merit-based increase is effective was ***solely because the employee went on unpaid FMLA leave.*** To the contrary, the policy applies to all leaves of absence taken ***before*** the effective date of merit-based pay increases, *id.* ¶¶ 2, 7, 53, and the law and regulations permit delaying such increases until an employee returns from their FMLA leave, as long as it is applied consistently across other unpaid leaves of absence. Further, it is undisputed that merit-based pay increases were not effective until November 3, 2024 –after Plaintiff went on leave on October 14, 2024 – and were reflected in the associates' November 22, 2024, paycheck. *Id.* ¶¶ 27, 93. It is further undisputed that immediately upon her return from her unpaid FMLA leave of absence, on January 6, 2025, her merit-based pay increase was effectuated. *Id.* ¶¶ 7, 56. It is also undisputed that the Amended Complaint does not allege any facts showing that MedStar Health took any adverse action after her return from leave, even after she allegedly claimed she contested the complained-of policy with human resources.

Thus, Plaintiff's claims of a FMLA violation based on not receiving a pay increase that did not go into effect until after she was already out on unpaid leave distort what the law protects and requires. The Act expressly indicates that nothing within the Act shall entitle the restored employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Had she not taken the unpaid leave ***and actually worked***, her merit-based pay increase would have been effective November 3, 2024. But since she took unpaid

---

[8] As discussed *supra*, MedStar Health does not require employees to use their PTO during their unpaid FMLA leave but will allow them to do so if they so choose. *See* Miles Decl. ¶ 5; *see* Ex. B (Plaintiff initially declining to use her

leave before this effective date, her effective date was adjusted to the date she returned from leave and began working again. That date was January 6, 2025. Thus, the benefit she would have received – the merit-based pay increase – was received when she returned from FMLA leave and was restored to her position, consistent with the law, and consistent with how it applies to other non-FMLA unpaid leave.

Thus, MedStar Health's decision to temporarily delay Plaintiff's merit-based pay increase aligns with the statute and the governing FMLA regulations. That is because "FMLA leave is treated the same as non-FMLA . . . in the context of [the effective date of a merit increase]." *Bell v. CSX Transportation, Inc.*, No. CV JKB-18-0744, 2019 WL 2146917, at *6 (D. Md. May 16, 2019).[9] Thus, Plaintiff's Complaint fails to allege sufficient facts to support a claim of FMLA retaliation and must be dismissed as a matter of law.

### D. Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because She Fails to Plead Sufficient Facts in Support Thereof.

Plaintiff's second count alleges that MedStar Health was unjustly enriched but fails to allege sufficient facts in support thereof. In Maryland, a Plaintiff alleging unjust enrichment must show the following:

> 1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 630–31 (D. Md. 2013). Oddly, Plaintiff alleges that MedStar Health "knowingly retained both the benefit of Stimac's continued employment with MedStar and the benefit of her raise, under circumstances that make it inequitable for MedStar to retain those benefits without the payment of their value." *See* ECF

---

PTO leave during her leave).

No. 11 ¶ 83. Indeed, Plaintiff's allegations "entirely misconstrues the nature of unjust enrichment. 'Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity *belong to another.*'" *EDI Precast, LLC*, 982 F. Supp. 2d at 631 (quoting *Everhart v. Miles*, 47 Md. App. 131, 422 A.2d 28, 32 (Md. Ct. Spec. App. 1980)) (emphasis in original). As already established *supra*, Plaintiff was already on an unpaid FMLA leave before the effective date, *i.e.*, the accrual of her merit-based pay increase. Thus, because the merit-based pay increase was not in effect when she went on unpaid FMLA leave, it technically did not belong to her. Moreover, it is undisputed that while on unpaid FMLA leave, Plaintiff ***did not*** provide any services or benefits for MedStar Health during that time. Thus, MedStar Health did not receive or retain any benefit from Plaintiff during this time and certainly did not unjustly retain any monies that belonged to her. Instead, the facts, as alleged in the Amended Complaint, show that Plaintiff received her merit-based pay increase once she returned and performed services on MedStar Health's behalf.

   **E.    Plaintiff's Breach of Contract Claim Should be Dismissed Because She Fails to Plead Sufficient Facts in Support Thereof.**

   Plaintiff claims that an email, sent to all associates informing them of the performance review process and how merit-based pay increases will be implemented for eligible employees, constitutes a written, binding contract. *See* ECF No. 11 ¶¶ 27, 89-94. "Under Maryland law, the elements of a claim for breach of contract are 'contractual obligation, breach, and damages.'" *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 596 (D. Md. 2018) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (Bankr. D. Md. 2015)). "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover N.*

---

[9] Further, had Plaintiff taken her FMLA leave after the effective date of merit-based pay increases, Plaintiff's merit-

*Am., LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 649 (D. Md. 2010), *aff'd,* 477 F. App'x 84 (4th Cir. 2012). Under Maryland law, a "plaintiff 'alleging a breach of contract 'must of necessity allege with certainty and definiteness' *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Gregory Packaging, Inc. v. Sodexo Operations, LLC*, No. CV DKC 24-187, 2024 WL 4335666, at *2 (D. Md. Sept. 26, 2024) (quoting *Jaigobin v. U.S. Bank, NA,* No. 18-cv-1775-DKC, 2019 WL 4598000, at *7 (D. Md. Sept. 23, 2019) (emphasis in original).

Here, Plaintiff does not identify a single fact to show that MedStar Health entered into a contract with her concerning a discretionary bonus. And indeed, attempting to rely on an innocuous email sent to all associates outlining the performance review process, establishing how associates are eligible for bonuses, and detailing when certain eligible associates will receive their bonuses does not prove the certainty and definiteness needed to support a breach of contract claim. Even more fatal to this claim is that "[l]ongstanding Maryland legal principles recognize that no enforceable contractual obligation is created when an employer offers employees a bonus for doing that which an employee is already required to do pursuant to the terms of the engagement of employment." *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 462 (D. Md. 2002). "The rationale for the rule is that there is no consideration—critical to contract formation—to support the employer's promise of additional compensation. Thus, the employer's promise is 'illusory' in the sense that it is not legally enforceable in an action for breach of contract" *Id.*

Thus, because Plaintiff's merit-based pay increase was contingent on performing as required and expected by MedStar Health and meeting a specific performance rating, there can be no contract. Thus, Plaintiff's breach of contract claim must be dismissed.

---

based pay increase would not have been delayed. But the leave still would have been unpaid leave.

**F.    Because Plaintiff Does Not Have Standing, Dismissal of the Class Allegations Is Appropriate.**

Here, as established *supra*, Plaintiff cannot show that she was harmed or otherwise injured by the delay in the effective date of her merit-based pay increase. Indeed, the FMLA permits postponing merit increases or other bonuses for those on FMLA leave, so long as it does so for others on similar non-FMLA leave. *See* 29 CFR § 825.215(c)(2). Putting aside the fact that MedStar Health did not deny her merit increase (it simply delayed the effective date until she returned), Plaintiff alleges that the policy applies to all individuals on a leave of absence, ***regardless* of whether *it is FMLA leave or not*,** *see* ECF No. 11 ¶ 2, 7, 53, and thus, complies with the FMLA. More specifically, the FMLA also allows employers to grant "[p]ay increases conditioned upon seniority, length of service, or work performed must be granted in accordance with **the employer's policy or practice** with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave." See 29 C.F.R. § 825.215(c)(1). As explained *supra*, Plaintiff's merit-based pay increase was applied according to MedStar Health's policy and practice, which is that those who initiate their leave of absence (not just FMLA leave) **before** the effective date of their merit increase will have the merit-based pay increase applied upon their return to work. Thus, because Plaintiff cannot show a concrete and particularized harm, she lacks standing and her Amended Complaint must be dismissed.

Moreover, because Plaintiff lacks standing, as she cannot show an injury in fact, the alleged class allegations must be dismissed similarly. The Fourth Circuit has stated that "in evaluating a class action complaint, '[courts must] analyze standing based on the allegations of personal injury made by the named plaintiffs.'" *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (quoting *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017)). "And class plaintiffs cannot meet their burden to establish standing '[w]ithout a

sufficient allegation of harm to the named plaintiff in particular.'" *Hutton*, 892 F.3d at 620 (quoting *Beck*, 848 F.3d at 269) (alternations in original). "Where, as here, a case is at the pleading stage, the plaintiff must clearly ... allege facts demonstrating each element" of proper standing. *Spokeo, Inc.*, 578 U.S. at 338 (internal quotations and citations omitted). Further, it is well settled:

> That a suit may be a class action, however, **adds nothing to the question of standing**, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Thus, because the named Plaintiff – Thy Ma Stimac – fails to sufficiently show an injury in fact with respect to the delayed effective date of her merit-based pay increase during the time that she was on an unpaid leave (which occurred before she accrued the increase), and not providing services to MedStar Health, she fails to establish standing. And as a direct result, there can be no putative class.

Thus, dismissal of the Amended Complaint with prejudice in accordance with Rule 12(b)(1) is appropriate due to Plaintiff's lack of standing. *See Stone v. Trump*, 400 F. Supp. 3d 317, 333-334 (D. Md. 2019) ("Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction.").

## CONCLUSION

Defendant requests that the Court dismiss the claims as set forth above. A proposed order is attached for your consideration.

Dated: November 26, 2025                    Respectfully submitted,


                                            */s/ D'Ontae D. Sylvertooth*
                                            D'Ontae D. Sylvertooth, D. Md. 21812
                                            OGLETREE, DEAKINS, NASH,
                                            SMOAK & STEWART, P.C.
                                            1909 K Street, N.W., 10th Floor.
                                            Washington, D.C.  20006
                                            Tel: (202) 887-0855
                                            Fax: (202) 887-0866
                                            dontae.sylvertooth@ogletree.com

                                            *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I caused the foregoing to be filed via the

Court's CM/ECF system, which served an electronic copy to Plaintiff's counsel:

Adam Farra (No. 18599)
Times Wang (No. 30858)
FARRA & WANG PLLC
1300 I Street N.W., Suite 400E
Washington, D.C. 20005
afarra@farrawang.com
twang@farrawang.com
(202) 505-5990

Mariyam Hussain
BERGER MONTAGUE PC
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
mhussain@bm.net
(773) 666-4316

Michael C. Dell'Angelo
Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mdellangelo@bm.net
mwallin@bm.net
(215) 875-3080

*Attorneys for Thy Ma Stimac and the Putative Class*

*/s/D'Ontae D. Sylvertooth*
D'Ontae D. Sylvertooth, D. Md. 21812

*Attorney for Defendant*