IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  | | |
|---|---|---|
| THY MA STIMAC | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-25-01693 |
| v. | * | |
| MEDSTAR HEALTH INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Thy Ma Stimac ("Plaintiff") brings this action, individually and on behalf of a class of similarly situated individuals, against her employer, MedStar Health Inc. ("Defendant"), for claims arising from her use of Family and Medical Leave Act ("FMLA") leave. ECF 11. Defendant has filed a motion to dismiss the claims against it, ECF 22, which Plaintiff opposed, ECF 23. Defendant then filed a reply, ECF 25, and Plaintiff filed a motion for leave to file a sur-reply, ECF 26, which Defendant opposed, ECF 27. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, the motion for leave to file a sur-reply will be denied as moot and the motion to dismiss will be granted.

## I.   BACKGROUND

The following facts are derived from Plaintiff's complaint, ECF 11, and are assumed to be true for purpose of the motion to dismiss.

Plaintiff is an occupational therapist at a hospital operated by Defendant. *Id.* ¶ 16. For the purpose of an annual raise, Defendant categorizes employees into three performance tiers: "Exceptional," "Strong," and "Needs Improvement." *Id.* ¶ 21. The Strong tier is also called the

"Standard" tier. *Id.* The categorization is tied not to quantitative metrics but rather to producing "incomparable (and unexpected) work products that deliver business and/or patient outcomes far beyond expectations" or "demonstrating strong leadership." *Id.* ¶ 22.

In June of each year, Defendant provides employees with their annual performance reviews and categorizes them into one of the three performance tiers. *Id.* ¶ 23. Then, in September, Defendant advises employees of the raises that correspond to the different tiers and when employees will begin to see the raises reflected in their paychecks. *Id.* ¶ 24. Employees in the Exceptional category receive a certain percentage increase in their pay, those in the Strong category receive a slightly lower increase, and those in the Needs Improvement category do not receive any raise. *Id.* ¶ 26.

Plaintiff received the Strong categorization in 2024. *Id.* ¶ 30. That September, Defendant informed employees that those receiving that categorization would receive a 3.5% increase and that the increase would be effective on employees' November 22, 2024 paycheck. *Id.* ¶ 27.

Plaintiff had a child and began maternity leave, which Defendant approved as FMLA leave, in October, 2024. *Id.* ¶ 33. Defendant requires that employees on FMLA leave use any accrued paid time off ("PTO") and claims that employees receive their full salary while using PTO. *Id.* ¶¶ 36–37. Plaintiff used both PTO and short-term disability to render the entirety of her leave paid. *Id.* ¶¶ 38–45. She did not receive her raise on any of her paychecks during her leave, which ran until early January, 2025. *Id.* ¶ 48.

When Plaintiff returned from leave, she inquired with Defendant's human resources department why she had not received her raise after it was set to be effective on her November 22 paycheck. *Id.* ¶¶ 52–53. An employee in that department, Tia M. Mitchell, informed her that Defendant's "standard policy and approach for associates on a leave of absence" is to apply the

raise once employees return from leave. *Id.* ¶ 53. When Plaintiff asked for documentation of this policy, Mitchell responded that she did "not have a document to share." *Id.* Plaintiff's first paycheck upon return from leave reflected her raise. *Id.* ¶ 56. She has not received back pay for her raise during her time on leave. *Id.* ¶ 57.

Plaintiff now brings three claims based on Defendant's refusal to pay her raise during her FMLA leave. Count 1 alleges an FMLA interference claim. *Id.* ¶¶ 72–78. Count 2 alleges unjust enrichment. *Id.* ¶¶ 79–86. And Count 3 alleges breach of contract. *Id.* ¶¶ 87–96.

## II.   LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

### A.   Standing

Defendant first argues that Plaintiff lacks standing. Standing requires a plaintiff to show (1) injury in fact, (2) that is caused by the conduct of the defendant, and (3) that is likely redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). If a defendant makes a factual challenge to standing at the motion to dismiss stage, by arguing that the facts in the complaint that pertain to standing are not true, the court may look beyond the complaint. *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017).

Defendant makes a factual challenge and asks that this Court consider several documents, ECF 24-1, 25-1, 25-2, beyond the complaint. Although it referenced those documents in its motion to dismiss, Defendant failed to attach them to that motion. After Plaintiff noted in her opposition that Defendant had not attached the documents, Defendant filed an errata notice, ECF 24, that attached one of the documents, and it then attached the other documents to its reply. Plaintiff then filed a motion for leave to file a sur-reply to respond to those documents filed after she had filed her opposition.

This Court will not consider Defendant's documents, however, because Defendant does not make an appropriate challenge to standing. Defendant argues that because, according to it, it complied with the FMLA, Plaintiff did not suffer an injury necessary to establish standing. The Fourth Circuit has rejected this kind of argument that "improperly conflate[s] the threshold standing question with the merits." *See DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022). In *DiCocco v. Garland*, that court emphasized that a plaintiff may have standing without having

4

stated a valid cause of action because "failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)). The court further concluded that, irrespective of whether the plaintiff had stated a valid cause of action, she had adequately pleaded an injury in fact in the form of, among other things, loss of wages, which it characterized as a "'classic and paradigmatic' injury for standing purposes." *Id.* at 591–92 (quoting *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018)).

Defendant's argument that it complied with the FMLA goes to the merits of Plaintiff's claims, and it cannot conflate that argument with one challenging standing so that it can present evidence beyond the complaint. Because this Court will not consider the documents filed by Defendant, it will deny as moot Plaintiff's motion for leave to file a sur-reply to respond to those documents. Regardless of whether Plaintiff has stated a valid cause of action, she has established standing. Like the plaintiff in *DiCocco*, she has pled the "classic and paradigmatic" injury in fact of loss of wages. She has also alleged that that loss was caused by Defendant's denial of her raise during her leave, and her injury would be redressed, in the form of damages compensating her for the lost wages, by a favorable decision from this Court.

Accordingly, this Court will now turn to the merits of Plaintiff's claims.

## B. FMLA Interference

Defendant contends that Plaintiff has failed to plead her FMLA interference claim. Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, the plaintiff must show that (1) she is entitled to a benefit under

the FMLA, (2) her employer interfered with the provision of that benefit, and (3) the interference harmed her. *Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 706 (4th Cir. 2024).

As an initial matter, this Court notes that receiving the raise during her period of leave was not itself a benefit to which the FMLA entitled her. Although the FMLA requires that employees who take FMLA leave be restored to the same or an equivalent position, including with equivalent pay, upon their return from such leave, 29 U.S.C. § 2614(a)(1), the statute permits that leave period to be unpaid, 29 U.S.C. § 2612(c). Nothing in the FMLA directly entitled Plaintiff to a pay increase during her leave.

Plaintiff instead argues that the denial of the raise during her period of leave interfered with her right to take the leave, a benefit to which the FMLA does entitle her, *see* 29 U.S.C. § 2612(a)(1)(A) (entitling employees to twelve weeks of leave to care for a recently born child). According to Plaintiff, the denial of the raise discourages employees from taking FMLA leave during the date on which the raise is otherwise set to take effect. She notes that discouragement from taking leave may constitute interference under the FMLA. *See Walker v. Gambrell*, 647 F. Supp. 2d 529, 538–39 (D. Md. 2009). Neither the parties nor this Court was able to locate any case law concerning the specific issue involved here, whether a raise set to take effect during a period of FMLA leave must be applied during the leave period if the employee is using some other form of compensation, such as PTO or short-term disability, to render it paid leave.

An applicable Department of Labor regulation contemplates an analogous circumstance, however. That regulation provides, in pertinent part:

> An employee is entitled to any unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases. Pay increases conditioned upon seniority, length of service, or work performed must be granted in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave.

29 CFR § 825.215(c)(1). It further provides as an example that "if an employee who used paid vacation leave for a non-FMLA purpose would receive the payment, then the employee who used paid vacation leave for an FMLA-protected purpose also must receive the payment." 29 CFR § 825.215(c)(2).

In light of its compliance with the principle derived from this regulation, and without any case law to the contrary, this Court concludes that deferring a conditional pay increase until an employee returns from FMLA leave when an employer also does so with respect to non-FMLA leave does not constitute interference under the FMLA. Although this regulation contemplates pay increases upon return from leave, which the parties agree Plaintiff received, the principle that conditional pay increases must be granted in accordance with the employer's policy or practice of granting them to employees on non-FMLA leave may be applied to the intra-leave pay increase at issue in this case. First, this Court notes that this pay increase is conditional because employees who receive a Needs Improvement categorization based on their work performance do not receive a pay increase. Second, Mitchell informed Plaintiff that Defendant's "standard policy and approach for associates on a leave of absence" is to apply the raise once employees return from leave. Thus, the complaint suggests that Defendant granted Plaintiff a conditional pay increase in accordance with its policy or practice of granting them to employees on non-FMLA leaves of absence by granting them upon return from leave. Plaintiff has not alleged that Mitchell's representation in that regard was false. She alleges only that when she asked for documentation of this policy, Mitchell responded that she did "not have a document to share" with her. Nothing in the regulation indicates that a written policy is required, and Plaintiff has alleged no other facts suggesting that Defendant does not actually have such a policy or practice.

This Court is not persuaded otherwise by Plaintiff's citation to several cases that she characterizes as showing that the denial of a merit increase, bonus, or commission that an employee earned before taking FMLA leave constitutes interference. First, two of the cases did not involve payments earned before the leave period. *See Turner v. McKesson Corp.*, No. 2:12-CV-2053-SLB, 2012 WL 3542240, at *1 (N.D. Ala. Aug. 10, 2012) (involving a pay increase that the employer had lowered because the plaintiff had taken leave *during* the evaluation period for the increase); *Dierlam v. Wesley Jessen Corp.*, 222 F. Supp. 2d 1052, 1054 (N.D. Ill. 2002) (involving a stay bonus that the employer lowered because the plaintiff had been on leave *during* the period in which the terms of the bonus required her active employment). The other cases reaffirmed the principle that employers must treat payments overlapping with FMLA leave in the same manner as those overlapping with non-FMLA leave. *See Applegate v. Kiawah Dev. Partners, Inc.*, No. C/A 2:12-738-RMG, 2013 WL 3206928, at *12 (D.S.C. June 24, 2013) (concluding that the employer could not deny payment of an incentive service fee while the plaintiff was on FMLA leave when she had previously received such payments while on vacation or sick leave); *Estes v. Meridian One Corp.*, 6 F. App'x 142, 145–47 (4th Cir. 2001) (concluding that the plaintiff was entitled to commissions earned while on FMLA leave when the employer paid them to employees on both paid and unpaid leave status). The facts alleged in the complaint suggest that Defendant did so here.

Because Plaintiff has failed to plead FMLA interference, that claim will be dismissed.

## C. Breach of Contract

Defendant also challenges the breach of contract claim. A breach of contract claim under Maryland law requires the plaintiff to establish the existence of a contractual obligation. *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020). In Maryland, no contract is created when an employer offers an employee a bonus "for doing that which an employee is

already required to do pursuant to the terms of the engagement of employment" because no consideration exists for the promise of additional compensation. *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 462 (D. Md. 2002). Plaintiff cites *Stage Front Tickets, Inc. v. Guiffre*, Civ. No. GLR-22-1978, 2022 WL 17740407, at *7 (D. Md. Dec. 16, 2022), and *Moon v. Veritas Technologies*, LLC, No. GJH-21-2750, 2022 WL 3348103, at *7 (D. Md. Aug. 12, 2022), for the proposition that courts in this district have recently allowed contract claims based on bonus agreements to proceed. Both of these cases, however, applied the principle from *Windesheim* and concluded that additional consideration was present because the bonus agreements required recipients to meet "specific performance objectives" or "a higher standard of performance." *Stage Front Tickets*, 2022 WL 17740407, at *7; *Moon*, 2022 WL 3348103, at *7.

This Court therefore must determine whether employees, like Plaintiff, who receive the Strong categorization under Defendant's raise program receive it for performing at a level beyond that otherwise required by the terms of their employment. While the complaint does not describe this program in detail, this Court finds several alleged facts relevant. The raise is based on three performance tiers: Exceptional, Strong, and Needs Improvement. The complaint notes that the Strong tier is also called the "Standard" tier. Employees who receive the Exceptional categorization receive the highest raise, and employees who receive a Needs Improvement categorization do not receive any raise.

Without additional factual allegations regarding the raise program, the only reasonable inference that this Court may draw from these allegations is that employees in the Needs Improvement tier have failed to meet expectations, those in the Strong, or Standard, tier have met expectations, and those in the Exceptional tier have exceeded expectations. If employees, like Plaintiff, who receive the Strong, or Standard, categorization have merely met, rather than

exceeded, expectations, the raise offered to them is in exchange for "doing that which an employee is already required to do pursuant to the terms of the engagement of employment." The promise to pay such a raise therefore does not form a contract. Because Plaintiff has failed to allege the existence of a contract, her breach of contract claim must be dismissed.

### D. Unjust Enrichment

Finally, Defendant challenges the unjust enrichment claim. To prove unjust enrichment, a plaintiff must establish that (1) she conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be inequitable to allow the defendant to accept or retain the benefit under the circumstances without paying value in return. *Benson v. State*, 389 Md. 615, 651–52 (2005). Plaintiff argues that Defendant was unjustly enriched by keeping for itself the value of her raise while she was on leave. Because Plaintiff has failed to show that the FMLA or a contract entitled her to the raise while she was on leave, however, she has failed to show that Defendant was unjustly enriched by keeping it. The unjust enrichment claim will therefore be dismissed.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to file a sur-reply, ECF 26, will be denied as moot and Defendant's motion to dismiss, ECF 22, will be granted. This case will be closed, subject to reopening should a motion seeking leave to file an amended complaint be filed within thirty days. A separate Order follows.


Dated: April 2, 2026                                           /s/
                                              Stephanie A. Gallagher
                                              United States District Judge


10